# EXHIBIT 1

Rental Agreement

LifeStorage

# RENTAL AGREEMENT - FLORIDA

Visit us at LifeStorage.com
FL-LS Rev 9/8/2020

**Intro #**
**Gate Code #**[redacted]
**Space No. and Approx. Size:** 1041 10 x 5 ("Space")
**Date Rental Agreement signed ("Effective Date"):** 3/18/2022
**Rent Due Date:** 18 of Each Calendar Month
**CUSTOMER'S NAME** John Mitchell
**MAILING ADDRESS**
[redacted]
**HOME PHONE** n/a
**WORK PHONE** n/a
**CELL PHONE** [redacted]
**EMAIL ADDRESS**[redacted]
**BY PROVIDING EMAIL ADDRESS ABOVE, CUSTOMER HEREBY AGREES THAT OWNER/MANAGER MAY PROVIDE ALL NOTICE REQUIRED UNDER THIS RENTAL AGREEMENT TO SAID EMAIL ADDRESS.**
**ARE YOU 18 YEARS OF AGE OR OVER?** ☑ **YES** ☐ **NO**
***(Customer must be over 18 years of age to enter Rental Agreement)***

Life Storage #1084
4805 96th St E
Palmetto, FL 34221
(941) 527-3440

**DRIVER's LICENSE**[redacted]
**State of Issuance** FL
**Expiration** 9/1/2023
**SOCIAL SECURITY (Last 4 digits) OR FEDERAL ID NO**
**ARE YOU A MEMBER OF THE MILITARY OR UNIFORMED SERVICES?** ☐ **YES** ☑ **NO**
***If Yes, check all boxes applicable:*** ☐ **Active** ☐ **Retired**
*(Refer to Paragraph 19 of Rental Agreement)*
**EMPLOYER**

**To the fullest extent permitted by law, Customer expressly consents to Owner/Manager contacting Customer via phone, e-mail or text messaging for purposes relevant to Customer's account or services related to Owner/Manager's business. Customer should review Customer's phone/text plan with its servicer to see if text message fees or data service rates apply and Customer agrees to accept such charges if applicable, or may opt-out if desired.**

**ADDITIONAL PERSON WHO MAY HAVE ACCESS TO CUSTOMER'S SPACE (Customer to provide named person with key and gate code). If named here or if Customer provides a key and a gate code to any person, that person shall be presumed to have Customer's permission to enter the facility and Customer's Space. The Owner/Manager has no duty or obligation to permit entry to any person authorized by Customer to access Customer's Space:**

**Vanessa Lamb**

**ADDITIONAL CONTACT:** *(Owner/Manager may contact such person in event of fire, break-in, Customer's unavailability due to accident, illness, hospitalization, arrest, unpaid rent, etc.)*
**Name: Vanessa Lamb**
**Relationship: sister**
**Address:**
**Phone No:** [redacted]

**Contents**

☑ Household Goods/Furniture ☐ Office Furn/Machines/Equip. ☐ Vehicle/Boat/Trailer ☐ TV/Stereo Equipment
☐ Landscaping/Construction Equip. ☐ Acct. Records/Sales Samples ☐ Tools/Appliances
☐ Other:

Customer represents that s/he owns or has legal possession of the personal property in Space. Customer attests that all the personal property in Space is free and clear of all liens and secured interests EXCEPT for items listed below:
**Property Description**
**Lienholder**
**Address of Lienholder**

1. **Term.** This Rental Agreement (hereinafter called the "Rental Agreement") is entered into by and between Life Storage LP and its agents (hereinafter called "Owner/Manager") and the above stated Customer (hereinafter called "Customer") as of the Effective Date stated above. Owner/Manager leases to Customer and Customer leases from Owner/Manager, the above identified space or unit (hereinafter called "Space") located in Owner/Manager's self storage facility (hereinafter called "Facility") as identified by Store Location above on all of the terms, provisions and conditions set forth in this Rental Agreement. Said Space is to be occupied and used for the purposes specified herein beginning on above stated date and continuing month-to-month until terminated or revised. Owner/Manager reserves the right to revise the terms of this Rental Agreement, including any charges and fees, with 30 days advance written notice to Customer (which, if authorized herein, shall include by email notice).
2. **Occupancy Charges. NOTICE: THE MONTHLY OCCUPANCY CHARGE AND OTHER CHARGES STATED IN THIS RENTAL AGREEMENT ARE THE ACTUAL CHARGES YOU MUST PAY:**
   a. Rent and sales tax: Customer shall pay Owner/Manager monthly rent in the amount of **$115.00** and sales tax in the amount of **$7.48** at the Owner/Manager's address set forth above, without notice, demand, deduction or offset (collectively, the "Rent"). The initial Rent payment shall be paid on the Effective Date of this Rental Agreement. Subsequent Rent payments are due on the Rent Due Date stated above for each calendar month. If the Customer Rent Due Date is on the 29th, 30th or 31st of the month,

and a month does not include one of these days, the Rent Due Date shall be the last day of that month. There will be no proration for the last month of occupancy.

b. If any of Customer's checks are returned for any reason, Customer shall pay Owner/Manager $25, if the face value does not exceed $50, $30, if the face value exceeds $50 but does not exceed $300, $40, if the face value exceeds $300, or 5 percent of the face amount of the check, whichever is greater.
c. Customer shall pay Owner/Manager a monthly electric fee in the amount of **$0.00** with the rent.
d. If Customer does not return the Space to Owner/Manager in "broom clean" condition, Customer shall pay Owner/Manager a minimum **$100.00** clean-up charge.
e. Owner/Manager requires Customer to pay a one-time administration fee of **$29.00** at the inception of this Rental Agreement.
f. To the extent permitted by law, Owner/Manager may pursue civil remedies against Customer for collection of past due amounts. Customer shall be responsible for and agree to reimburse Owner/Manager for reasonable costs incurred by Owner/Manager in enforcing this Rental Agreement, **Customer agrees to reimburse Owner/Manager the fees of any collection agency, which will be added to the account at the time it is placed with an agency for collection and may be based on a percentage at a maximum of 32% of the debt, and all reasonable costs and expenses, including reasonable attorneys' fees, incurred in such collection efforts.**
g. Customer shall pay for any and all repairs to the Space or premises arising out of the negligence or willful misconduct of Customer, its agents, employees, licensees, invitees, or contractors.
h. Owner/Manager may require or prohibit payment by credit card, check, money order, cashier's check, traveler's check, or cash, at any time.

3. **DEFAULT/LIEN. OWNER/MANAGER SHALL HAVE A LIEN ON ALL PERSONAL PROPERTY STORED BY CUSTOMER AT THIS FACILITY. IF CUSTOMER FAILS TO PAY RENT OR ANY PART THEREOF OR FAILS TO FULFILL ANY OF THE TERMS, PROVISIONS OR CONDITIONS HEREIN SPECIFIED TO BE FULFILLED BY CUSTOMER, CUSTOMER WILL BE CONSIDERED IN DEFAULT AND OWNER/MANAGER MAY TAKE ANY OR ALL OF THE FOLLOWING ACTIONS:**

a. Owner/Manager may terminate and/or not renew Rental Agreement.
b. Upon the failure of the Customer to pay rent within **FIVE (5)** days of when it becomes due, the Owner/Manager may, without notice, overlock said Space thereby denying the Customer access to the personal property and pursue all other remedies afforded to Owner/Manager.
c. **Late charges: If Customer does not pay in full any monthly rental payment before the close of business within FIVE (5) days of when it becomes due, Customer shall pay Owner/Manager a late charge of TWENTY U.S. DOLLARS ($20.00) for each delinquent payment or TWENTY PERCENT (20%) of the amount of monthly rent, whichever is greater. (Late charges will be deducted first from any payment received late with the balance credited to your account.)**
d. Owner/Manager's overlock will not be removed until all sums are paid in full. Owner/Manager is not required to accept partial payment(s) from Customer. Acceptance of partial payment(s) does not waive Owner/Manager's right to proceed with foreclosure sale based on notice of claim and/or advertising (or posting) done prior to partial payment.
e. On the **THIRTIETH (30th)** day of continuous default, or thereafter, Owner/Manager may enforce its lien on the personal property stored in the Space pursuant to State law for: rent, late charges, labor, damages, cleaning fees, charges for checks returned to Owner/Manager, postage amounts for mail sent by U.S. Postal Service providing notification of late charges and auctions, expenses necessary for the preservation of the personal property stored on the premises, and the expenses incurred in the sale or other disposition of said personal property pursuant to law. Owner/Manager may cut the lock on Customer's Space and may remove, sell or dispose of any and all personal property located within said Space pursuant to Florida Law. Owner/Manager may first attempt to sell any or all said personal property at public sale. If not sold at public sale, any or all items of said personal property may then be otherwise disposed of and/or destroyed by Owner/Manager.
f. **Lien sale preparation fee: Customer shall pay a $115.00 lien sale preparation fee to Owner/Manager any time Customer's account is in continuous default for a period of THIRTY (30) days.**
g. Despite the fact that this Rental Agreement, and any Addendum or Amendment to this Rental Agreement, may cover more than one Space, Customer acknowledges that all such Spaces are leased individually and separately, and may be treated separately, subject to the provisions of this Rental Agreement.
h. Effective July 1, 2020, in the event a Customer's auction of his/her Space has opened for bidding on storagetreasures.com, and such auction is canceled because the Customer settles his/her outstanding balance with Owner/Manager, storagetreasures.com shall levy on Customer a $20.00 auction cancellation fee per canceled Space.

4. **INSURANCE. ALL PERSONAL PROPERTY IS STORED BY CUSTOMER AT CUSTOMER'S SOLE RISK. INSURANCE IS CUSTOMER'S SOLE RESPONSIBILITY. As a condition of leasing an enclosed storage Space, and at Customer's expense, Customer must provide proof of insurance protecting the personal property stored within the enclosed storage Space against fire, burglary or other damage.**

a. Customer has the opportunity to purchase insurance under the Xercor Insurance Services LLC Program (the "Xercor Program"). The Xercor Program insurance is provided under a Master Policy issued to the Owner/Manager of this facility by an insurer authorized to write insurance in this state. Owner/Manager's affiliate reinsures the risk under the Xercor Program and Owner/Manager may benefit financially from Customer's purchase of this insurance.
b. Customer further acknowledges that:
   i. The Xercor Program offers coverage up to $5,000.
   ii. If you elect to purchase insurance under the Xercor Program, you will be provided with evidence of coverage by Xercor.
   iii. Your coverage may be cancelled within 30 days upon written notice to Xercor and a full refund will be made to you.
   iv. The purchase of insurance under the Xercor Program is not required in order to rent storage space and Customer may instead provide the Owner/Manager or its agents with proof of suitable coverage as required under this Rental Agreement through a renter's, homeowner's, business, watercraft, vehicle or other source of coverage.
   v. The insurance provided under the Xercor Program may duplicate, in whole or in part, coverage already provided by another policy. The Owner/Manager and its employees are not qualified or authorized to evaluate the adequacy of Customer's existing insurance coverage. The actual amount paid in the event of loss or damage under any insurance will be determined under the terms of the insurance policy.

**RELEASE OF OWNER/MANAGER'S LIABILITY FOR PROPERTY DAMAGE: TO THE FULLEST EXTENT PERMITTED BY LAW, ALL PERSONAL PROPERTY STORED WITHIN OR UPON THE STORAGE SPACE BY CUSTOMER SHALL BE AT CUSTOMER'S SOLE RISK. OWNER/MANAGER AND OWNER/MANAGER'S AGENTS AND EMPLOYEES SHALL NOT BE LIABLE FOR ANY LOSS OF OR DAMAGE TO ANY PERSONAL PROPERTY IN THE SPACE OR AT THE FACILITY ARISING FROM ANY CAUSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, BURGLARY, MYSTERIOUS DISAPPEARANCE, FIRE, WATER DAMAGE, RODENTS, ACTS OF GOD, OR THE MALFUNCTION OF ANY TYPE OF UTILITY, APPLIANCE, FIXTURE OR CLIMATE CONTROL SYSTEM, WHETHER OR NOT INSTALLED BY OWNER/MANAGER, OWNER/MANAGER'S AGENTS OR EMPLOYEES.**

**RELEASE OF OWNER/MANAGER'S LIABILITY FOR BODILY INJURY: TO THE FULLEST EXTENT PERMITTED BY LAW, OWNER/MANAGER, OWNER/MANAGER'S AGENTS AND EMPLOYEES SHALL NOT BE LIABLE TO CUSTOMER AND/OR CUSTOMER'S GUESTS, INVITEES, FAMILY, EMPLOYEES OR AGENTS FOR INJURY OR DEATH AS A RESULT OF CUSTOMER'S USE OF THE SPACE OR THE FACILITY OR WHILE ON OR ABOUT THE FACILITY, EVEN IF SUCH INJURY IS CAUSED BY THE ACTIVE OR PASSIVE ACTS OR OMISSIONS OR NEGLIGENCE OF THE OWNER/MANAGER, OWNER/MANAGER'S**

**AGENTS OR EMPLOYEES.**

BY INITIALING HERE, CUSTOMER ACKNOWLEDGES HAVING READ AND FULLY UNDERSTOOD ALL OF THE TERMS AND CONDITIONS OF THIS SECTION 4 AND AGREES TO OBSERVE AND BE BOUND BY THEM.

5. **Third Party Interest.** Customer will store only personal property that Customer owns and will not store personal property that is claimed by another person or in which another person has an interest except for such property subject to lien or security interest specifically listed by Customer. Customer certifies it has furnished Owner/Manager with a list of names and addresses of all third parties who may own, lease, have a security interest in, or lien upon, any personal property stored in the Space. Customer shall indemnify and hold Owner/Manager and its agents harmless from and against any and all causes of action due to the sale and/or other disposition by Owner/Manager of items of personal property stored in the Space leased by Customer in which third parties hold a lien or have any legal interest whatsoever.
6. **Limitation of Value. To the fullest extent permitted by applicable law, Customer agrees that there shall be no liability of Owner/Manager to Customer for any claim or suit by Customer, including but not limited to any suit which alleges wrongful or improper foreclosure or sale of the contents of a storage Space. Customer agrees not to store property with a total value in excess of $5,000.00.** Nothing herein shall constitute any agreement or admission by Owner/Manager that Customer's stored property has any value, nor shall anything alter the release of Owner/Manager's liability set forth herein. If Owner/Manager is found liable for damages to a Customer's personal property caused by Owner/Manager, said liability shall not exceed $5,000.
7. **Abandonment.** Customer has "abandoned" the storage Space in the event of any of the subsections (i), (ii) or (iii): (i) if ALL of the following occur: (a) Customer has not paid rent or other sums due; (b) Customer's lock has been removed by someone other than Owner/Manager or has been removed by Owner/Manager after giving statutory notice of claim; and (c) Customer's Space contains nothing of value to the ordinary person OR (ii) if ALL of the following occur: (x) Customer has given Owner/Manager written or oral move-out notice or notice of termination/non-renewal has been provided; (y) the move-out date or termination date has expired; and (z) Customer has not claimed its property after at least thirty (30) days' notice from Owner/Manager for Customer to remove such property; OR (iii) Owner/Manager concludes based upon other reasonable considerations, including, but not limited to, an unlocked Space, that Customer has 'abandoned" Customer's property and Space. If Customer has "abandoned" the Space, Customer relinquishes all rights to contents in the Space; Owner/Manager may enter, remove, dispose of, and/or donate all contents.
8. **Customer's Lock.** Customer shall keep the Space locked and shall supply its own lock and is restricted to only one (1) lock per door. In the event Space remains unlocked, the Owner/Manager shall have the right to secure the Space with a lock of its own at Customer's expense. Owner/Manager is not required to lock unlocked Spaces. The use by a Customer of electronically-controlled lock to secure their Unit(s) does not change the non-bailment status of the Owner/Manager.
9. **Use; Compliance with Laws.** The Space may be used only for the storage of personal property described herein. The Customer agrees that the property will not be used for any unlawful purposes and the Customer agrees not to commit waste, nor alter, nor affix signs on the Space, and will keep the Space in good condition during the term of this Rental Agreement. No bailment or warehouseman relationship is created by this Rental Agreement. Owner/Manager is not a warehouse operator and does not take care, custody nor control of Customer's stored property. The exclusive care, custody, and control of any and all personal property stored in the Space shall remain vested in the Customer. Owner/Manager is not responsible for the safekeeping of the personal property stored in the Space. Customer shall assume full responsibility for who has the keys to access the Space. Customer agrees not to store collectibles, heirlooms, jewelry, and works of art or any property having special or sentimental value to Customer. Customer waives any claim for emotional or sentimental attachment to the stored property. Residential use of the Space by Customer is prohibited. It is prohibited for any human to inhabit, and no animal may be kept in, the Space. It is prohibited and Customer may not operate any business, engage in, conduct or allow any illegal activity, produce any goods or provide any services in the Space or on premises. Customer shall immediately dispose of all trash, rubbish, and refuse. Nothing may be stored outside of the rented Space. Customer is prohibited from and shall not store nor generate, release, or dispose of in or around the Space flammable, corrosive, organic, biological, chemical, odorous, noxious, toxic, medical waste, or radioactive substances, petroleum products, food or foodstuffs or items for consumption by humans or animals, intoxicants, explosives, firearms, munitions, gunpowder, or other dangerous or hazardous materials and Customer is strictly prohibited from engaging in any activity which produces such materials. Hazardous materials means materials classified as hazardous or toxic under any law, ordinance or regulation. Owner/Manager, at Customer's sole expense, may enter the Space at any time pursuant to Section 15 to remove and dispose of prohibited items. Customer shall comply with all municipal, state, and federal laws and regulations affecting its use of the Space. Customer shall indemnify, defend, and hold Owner/Manager harmless from any and all claims, damages and expenses (including attorneys' fees and investigative, remedial and response costs) arising out of Customer's violation of this paragraph. Any violation of these terms or provisions shall constitute a default under this Rental Agreement.
10. **Notices.** All notices, demands or requests by either party shall be in writing and shall be sent by U.S. Mail in accordance with State law to the parties at the addresses set forth in the heading of this Rental Agreement. Anything in this Rental Agreement to the contrary notwithstanding, if Customer elects to give Owner/Manager the right to give email notice by providing Customer's email address above, all notices, demands or requests by Owner/Manager may be sent to Customer's email provided above pursuant to State law.
11. **Customer's Representations.** Customer represents and warrants that the information Customer has supplied in this Rental Agreement is true, accurate and correct and Customer understands that Owner/Manager is relying on Customer's representations. Customer agrees to give prompt written notice to Owner/Manager of any change in Customer's address, any change in the liens and secured interests on Customer's property in the Space and any removal or addition of property into or out of the Space. Customer understands that Customer must personally deliver such notice to Owner/Manager or mail the notice by Certified Mail, return receipt requested, with postage prepaid to Owner/Manager at the address shown on the Rental Agreement.
12. **Change of Address.** Either party may change such physical or email address by the giving of notice in conformity with this Rental Agreement. For the purposes of the lien on the personal property described in Section 3 above, "Last known address" means that physical or email address provided by the Customer in this Rental Agreement or the physical or email address provided by Customer in a subsequent written notice of change of physical or email address. Notices from Customer must be COMPLETE and in writing, dated and signed by Customer. Return addresses on envelopes or checks are insufficient. Change of phone numbers may be done orally or in writing.
13. **Condition and Alteration of Space.** Customer has inspected the Space and accepts it "as is." Customer shall immediately notify Owner/Manager of any fire (or other casualty), defects or dangerous conditions. Customer shall keep the Space in good order and condition, and shall pay for any and all repairs to the Space or on premises arising out of the negligence or willful misconduct of Customer, its agents, employees, licensees, invitees, or contractors. Customer shall not attach anything to the walls, ceiling, floors, doors, or any part of the premises.

14. **Assignment; Subletting.** Customer shall not assign or sublet all or any part of the Space without Owner/Manager's prior written consent.
15. **Right of Entry.** Owner/Manager may enter the Space under any of the following circumstances: (1) Owner/Manager has express written authority from Customer to enter; (2) there is an "emergency" (i.e. Owner/Manager reasonably believes there is imminent danger or health hazard to persons or property, including, but not limited to, because of storage of animals, explosives, ammunitions, food, carcasses, volatile chemicals, fuel not in containers approved by Owner/Manager, other hazardous materials, or broken doors or locking mechanisms, danger of flooding or fire, etc.); (3) Owner/Manager has reasonable suspicion that Customer is in violation of the terms of this Rental Agreement; (4) Owner/Manager has made written notice to Customer for access to the Space for inspection, repair, improvement, or relocation of contents for same, or after casualty loss; and Customer has failed to provide such access at the time and date requested, which may be no sooner than 7 days from the mailing of such request; or (5) Owner/Manager is exercising its rights in regard to the lien on personal property described in Section 3 above. When Owner/Manager has authority to enter under this Rental Agreement, Owner/Manager may at Customer's cost remove Customer's lock(s) and relocate all contents to another Space on premises. Owner/Manager shall promptly notify Customer of an entry or relocation authorized by this Rental Agreement, and Customer shall have continued access to such relocated property except when Customer is in default. Upon presentation of a search warrant or court order by a health or law officer, Owner/Manager may allow such officer to open the Space for inspection by such officer; and such officer may lock the Space.
16. **Rules and Regulations.** Customer agrees to be bound by the Rules and Regulations as posted by the Owner/Manager from time to time. Owner/Manager shall have the right to promulgate rules and amend existing rules and regulations at all times. All Rules and Regulations shall be deemed to be part of this Rental Agreement and incorporated herein.
17. **Waiver.** Owner/Manager's acceptance of any total or partial payment or rent or other sum due hereunder shall not be a waiver of any of Owner/Manager's rights or remedies.
18. **Climate Controlled Spaces.** Climate controlled spaces are heated or cooled depending on outside temperature. These spaces do not provide constant internal temperature or humidity control. Owner/Manager does not warrant or guarantee temperature or humidity ranges inside the Space.
19. **Military Service.** IF CUSTOMER IS IN THE MILITARY SERVICE, OR SUBSEQUENTLY ENTERS OR LEAVES THE MILITARY SERVICE, CUSTOMER MUST PROVIDE WRITTEN NOTICE TO OWNER/MANAGER OF ANY CHANGE IN SUCH MILITARY STATUS.

20. **Indemnification of Owner/Manager.** To the fullest extent allowed by law, Customer will defend, indemnify and hold the Owner/Manager harmless from and against any and all manner of claims for damages or lost property or personal injury and costs including attorney's fees arising from Customer's lease of the Space on the premises or from any activity, work or thing done, permitted or suffered by Customer in or on the Space or about the premises. In the event that the Space is damaged or destroyed by fire or other casualty, Owner/Manager shall have the right to remove the contents of the Space and store it at the Customer's sole cost and expense without liability for any loss or damage whatsoever, and Customer shall defend, indemnify and hold Owner/Manager harmless from and against any loss, cost, or expense of Owner/Manager in connection with such removal and storage. Should any of Owner/Manager's employees perform any services for Customer at Customer's request, such employee shall be deemed to be the agent of the Customer regardless of whether payment for such services is made or not, and Customer agrees to indemnify and hold Owner/Manager harmless from any liability in connection with or arising from directly or indirectly such services performed by employees of Owner/Manager. Notwithstanding that Owner/Manager shall not be liable for such occurrences, Customer agrees to notify Owner/Manager immediately upon the occurrence of any injury, damage, or loss suffered by Customer or other person in any of such circumstances.
21. **Time to File Claim or Bring Suit.** Customer must bring any claim that arises out of this Rental Agreement, the negotiations that preceded this tenancy, or for loss of or damage to stored property within twelve (12) months of the date of the acts, omissions, or inactions that gave rise to such claim or suit or twelve (12) months after the termination of this Rental Agreement, whichever occurs first.
22. **Disclaimer.** The agents and employees of Owner/Manager are not authorized to make warranties about the Space, premises, and Facility referred to in this Rental Agreement. Owner/Manager's agents' and employees' ORAL STATEMENTS DO NOT CONSTITUTE WARRANTIES, and shall not be relied upon by Customer, nor shall any of said statements be considered a part of this Rental Agreement. The entire agreement and understanding of the parties hereto is embodied in this writing and NO OTHER WARRANTIES ARE GIVEN BEYOND THOSE SET FORTH IN THIS RENTAL AGREEMENT. The parties hereto agree that the IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE and all other warranties, express or implied, ARE EXCLUDED from this transaction and shall not apply to the Space, premises and Facility referred to herein. It is further understood and agreed that Customer has been given an opportunity to inspect, and has inspected, this Space, premises and Facility, and that Customer accepts such Space, premises and Facility AS IS and WITH ALL FAULTS. Customer understands that all unit sizes are approximate and enters into this Rental Agreement without reliance on the estimated size of the storage space.
23. **Customer's Breach.** In the event the Customer breaches this Rental Agreement, Owner/Manager shall be allowed, at Owner/Manager's discretion, but not by way of limitation, to exercise any or all remedies provided herein or at law or in equity.
24. **Entire Agreement; Governing Law; Miscellaneous.** This Rental Agreement is the entire agreement between Customer and Owner/Manager and may not be changed or ended orally except as expressly set forth in this Rental Agreement. TO THE EXTENT PERMITTED BY LAW, WITH THE EXCEPTION OF THE PROVISIONS SET FORTH IN SECTIONS 25 AND 27, ALL TERMS OF THIS RENTAL AGREEMENT, INCLUDING WITHOUT LIMITATION, MONTHLY RENTAL CONDITIONS OF OCCUPANCY AND CHARGES, MAY BE UNILATERALLY AMENDED BY OWNER/MANAGER UPON THIRTY (30) DAYS PRIOR WRITTEN NOTICE TO CUSTOMER. This Rental Agreement shall be governed by the laws of Florida. To the fullest extent permitted by law, in the event the Owner/Manager is required to obtain the services of an attorney to enforce any of the provisions of this Rental Agreement, Customer agrees to pay in addition to the sums due hereunder an additional amount as and for attorneys' fees and costs incurred. Except in lawsuits involving personal injuries, the prevailing party in a lawsuit shall recover attorneys' fees and litigation costs from the non-prevailing party. Customer will reimburse Owner/Manager for all attorneys' fees and litigation costs incurred by Owner/Manager in defending or responding to third party actions or requests to recover property stored in Customer's Space. The waiver by Owner/Manager of any breach by Customer of any provision of this Rental Agreement shall not be construed as a waiver of any subsequent breach thereof. None of the provisions of this Rental Agreement shall be waived by Owner/Manager unless such waiver is in writing and signed by Owner/Manager.
25. **AGREEMENT TO ARBITRATE. OWNER/MANAGER AND CUSTOMER AGREE THAT AT THE REQUEST OF EITHER OF THEM ANY DISPUTE ARISING OUT OF OR RELATING TO THIS RENTAL AGREEMENT SHALL BE RESOLVED BY INDIVIDUAL ARBITRATION ONLY, EXCEPT THAT ANY DISPUTE OR CLAIM THAT MAY BE BROUGHT IN SMALL CLAIMS COURT OR ANY CLAIM THAT CANNOT BE ARBITRATED UNDER APPLICABLE LAW SHALL NOT BE SUBJECT TO ARBITRATION. ANY SUCH ARBITRATION SHALL BE THE PARTIES' SOLE AND EXCLUSIVE REMEDY. BY AGREEING TO ARBITRATION, CUSTOMER UNDERSTANDS THAT ANY SUCH DISPUTE WILL BE DECIDED BY A NEUTRAL THIRD PARTY OUTSIDE OF COURT AND THAT CUSTOMER AND OWNER/MANAGER ARE WAIVING THEIR RIGHTS TO SUE IN A COURT OF LAW AND TO HAVE A JURY TRIAL REGARDING SUCH DISPUTE. CUSTOMER AGREES THAT SUCH ARBITRATION PROVIDES CUSTOMER WITH A MEANINGFUL AND AFFORDABLE WAY TO HANDLE DISPUTES RELATED TO THIS RENTAL AGREEMENT. The arbitration will be administered by the American Arbitration Association under its then current Commercial Arbitration Rules. THE ARBITRATOR SHALL NOT HAVE AUTHORITY TO JOIN OR COMBINE THE CLAIMS OF MORE THAN ONE PERSON OR TO HEAR OR DECIDE ANY CLASS, COLLECTIVE OR REPRESENTATIVE ACTION OF ANY KIND AGAINST OWNER/MANAGER OR CUSTOMER. The determination of which claims or issues are arbitrable shall be made by the arbitrator, not the courts. The award of the arbitrator shall be final and binding and judgment on it may be entered in any court**

**of competent jurisdiction. The arbitration shall take place in the county seat of the county in which Customer resides. Customer and Owner/Manager shall pay their own filing and legal fees and other expenses, unless provided otherwise by law or this Rental Agreement. The interpretation and enforcement of this arbitration provision shall be governed by the Federal Arbitration Act. This provision shall survive termination of this Rental Agreement.**

26. **WAIVER OF JURY TRIAL. CUSTOMER AND OWNER/MANAGER WAIVE THE RIGHT TO A JURY TRIAL IN ANY DISPUTE OR CLAIM BETWEEN THEM THAT PROCEEDS IN COURT ARISING FROM OR RELATED TO THIS RENTAL AGREEMENT, AND AGREE THAT THE DISPUTE OR CLAIM WILL BE HEARD AND DECIDED ONLY BY A JUDGE. This provision shall survive termination of this Rental Agreement.**
27. **WAIVER OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION. CUSTOMER AND OWNER/MANAGER WAIVE THE RIGHT TO COMMENCE, BE A PARTY TO, JOIN IN OR BE AN ACTUAL OR PUTATIVE CLASS MEMBER OF ANY CLASS, COLLECTIVE, GROUP, JOINT, OR REPRESENTATIVE ACTION OF ANY KIND IN ANY FORUM, INCLUDING IN COURT AND ARBITRATION, ARISING FROM OR RELATED TO THIS RENTAL AGREEMENT. This provision shall survive termination of this Rental Agreement.**

BY INITIALING HERE, CUSTOMER INDICATES THAT HE/SHE HAS READ, UNDERSTANDS, AND AGREES TO THE ABOVE AGREEMENT TO ARBITRATE, TO WAIVE A TRIAL BY JURY AND TO WAIVE ANY CLASS, COLLECTIVE AND REPRESENTATIVE ACTION.

28. **Binding Agreement.** This Rental Agreement is binding upon, and shall inure to the benefit of, Owner/Manager and Customer and their respective heirs, legal representatives, successors and assigns.
29. **Invalidity.** If one or more of the provisions of this Rental Agreement are deemed to be illegal or unenforceable, the remainder of this Rental Agreement shall be unaffected and shall continue to be fully valid, binding and enforceable.

**RULES AND REGULATIONS:** Violation of any Rule or Regulation may be considered a default under the terms of this Rental Agreement and may result in immediate termination and/or non-renewal of this Rental Agreement.

1. **Trash disposal is not provided on premises.** Each Customer is responsible for the removal and disposal of any trash generated by that person. A minimum charge of $25.00 may apply for the unauthorized use of the trash dumpster.
2. Children's activity must be properly monitored at all times. Except with respect to service or therapy animals, Customer may not bring dogs or other animals on the premises.
3. Customer shall not interfere with the quiet enjoyment of the premises. Disorderly conduct and profane language, including, but not limited to, comments which are sexual in nature, threatening or derogatory based upon any protected status, are expressly prohibited.
4. The Customer shall not post any billboards, signs, banners, or advertisement of any other manner without the express written consent of the Owner/Manager.
5. Any and all parking rules are to be obeyed, as well as right-of-way. Do not block access to other storage Spaces.
6. Owner/Manager may exclude from Customer's storage Space and the premises:
   a. any person who does not have a key or combination to a storage Space and is not with a person who has such key or combination;
   b. any person who has a key or combination to a storage Space but does not know the name of the Customer of the Space or cannot provide satisfactory identifying information of the Customer; and,
   c. any person who is damaging the property of others, disturbing the peace, or otherwise violating criminal laws.
7. **It is required that Customer notify the Owner/Manager in writing prior to vacating your Space(s). Locks must be removed when you vacate or you will be charged additional rent. At the time you vacate, your Space must be left "broom-swept" clean and undamaged.**
8. Access to your Space is restricted to the posted gate hours on premises.
9. No distribution of materials and/or solicitation of employees or other customers is allowed.

DO NOT SIGN THIS RENTAL AGREEMENT BEFORE YOU READ IT AND FULLY UNDERSTAND THE TERMS AND CONDITIONS HEREIN. Customer expressly acknowledges by signing this Rental Agreement and s/he has read, understands and agrees to be bound by the terms and conditions expressed in this Rental Agreement and all above information, including, without limitation, terms and conditions regarding insurance, the Agreement to Arbitrate, Waiver of Jury Trial, and Waiver of Class, Collective and Representative Action.

**SIGNATURE OF CUSTOMER:** **OWNER/MANAGER: Life Storage LP**

**By:** jenruiz <electronically signed> (Agent)

**Date:** 3/18/2022